The next case for argument is Lin v. Barr and we have one counsel Mr. Lee or Ms. Lee, I'm not sure which, arguing by phone and then we have Mr. Cotter from the Attorney General. So I can't see you so I don't know whether you are male or female so I apologize. Is it Mr. or Ms. Lee? Good morning Your Honor, this is Ji Xian Ni. Okay, very good. Would you like to proceed with your argument please? Yes, Your Honor. Good morning, Your Honor. My name is Ji Xian Ni and I represent the petitioner. The issue before this court is whether substantial evidence supports the BIA's adverse credibility determination. In finding petitioner not to be credible, the BIA relied on inconsistencies between petitioner's testimony and his document entitled Certificate of Marriage and Birth for Floating Population regarding the date his wife was first body sterilized and the total amount he was fined after his children's unauthorized birth. For both inconsistencies, petitioner provided plausible explanation. With respect to the data discrepancy, petitioner explained that he used the lunar calendar while the official used the western calendar. The BIA rejected the petitioner's explanation primarily for the reason that the petitioner has provided no proof for this historical fact. Our position is the petitioner was not unnoticed to provide such proof. Well, counsel, the way I read the BIA, I mean this may go to a different point, but the way I read the BIA is saying that they took essentially administrative notice of I guess some government website in China, maybe the Hong Kong government website or some website and said that translate October 10, 1995 in the lunar calendar to November 1, 1995 in the Gregorian calendar and thus it still doesn't work for your client because it's not, sorry, to December 1 because it's not November, it's December. So I didn't see them saying you absolutely need evidence so much as even looking at this, it still doesn't work for your client. Oh, yes, as I pointed out in my brief, actually the BIA relied upon a website, a website link which was found to be invalid. And in addition that we submitted, we included in our brief saying, indicating that the Chinese calendar used in China, actually there are several versions which has not been standardized until May 12, 2017. Counsel, even if we were to agree with you that the date issue is trivial, why would, and isn't something on which the BIA or the IJ could base an adverse credibility finding, why isn't the 4000 RMB difference in the fine amount, why are we compelled to reject the BIA's determination that that was an inappropriate basis for finding your client not credible? I mean, even if they could have accepted your client's explanation, they said they weren't compelled to, and why should we find that they were compelled to? Yes, sir, for the fine amount, again, the dean provided a possible explanation. I agree, I agree, your client provided a possible explanation, but the law is that neither the IJ nor the BIA is required to accept plausible or possible explanations if they provide a cogent reason for not, and to reverse, we have to find that the evidence compels a contrary conclusion. Why does the evidence here compel a contrary conclusion? Well, okay, your honor, in rejecting the petitioner's explanation in this regard, the BIA faulted that no objective evidence has been presented. In this case, the BIA expected a clarifying sworn statement from his wife explaining the difference in the fine amount. However, petitioner was never put on notice that he needed to present such a letter, so therefore- Counsel, I mean, with all due respect, that's not how I read the BIA decision. I read the BIA decision as saying they are not compelled to accept your explanation and that they don't find that what you submitted rehabilitated your credibility as opposed to requiring you to submit something else. I think those are two different things. If someone is requiring you to submit something, then you have to have a fair opportunity to rebut it, but if they're simply saying that what you submitted didn't rehabilitate your client's credibility, I don't believe the law requires them to give you a subsequent opportunity to clarify the documentary evidence you submitted. Why is what I just said wrong in your view? In that regard, your honor, the law to review the BIA, the law requires the BIA to consider the totality of the circumstances and all the relevant factors in entering an adverse credibility determination. So, in this case, let's assume that the inconsistency regarding the fine amount has not been fully explained away by petitioner. That inconsistency alone will not rise to level of potential evidence to support adverse credibility determination. Counsel, with respect, I don't think that is correct. It can rise to that, and in this case, if I understand the facts correctly, 4,000 RMB is a lot of money, and I think the BIA or the IJ initially were entitled to take into account the fact that it was highly improbable that that amount of money would have been omitted from the amount stated. Is that incorrect? Well, your honor, the 4,000 RMB was paid in 2008. I don't believe from petitioner's a lot of money because when the petitioner discussed about a fine associated, the fine that was levied against him after his wife gave birth to a second child, that was in 1995. He was talking about he was making about 2,000 RMB per year or 3,000 RMB per year. That was in 2095, but what we are talking about is the 2008 regarding the 4,000 RMB. In 2008, the petitioner was already... Counsel, this is Judge Boggs, if I could break in. Explain to me how it is that this is 15 years after the first of these events. That is, I would have thought, if this is the, forgive my pronunciation, is this the hokal for living in that area? Wouldn't there have been earlier contemporaneous ones? Whereas this one apparently was issued within the month of when he left China, but was this the first one of these booklets? Oh, well, actually, Your Honor, the country condition, the background information containing the country condition described the floating population. So in China, the policy is if you want to move outside to find a work outside, you can apply a certificate of population for floating population to show that your compliance with the birth control policy in China. So you can go to the... You're saying she never wanted to have one of these certificates until the month that he left the country. Is that what you're saying? Yeah, that's right. Actually, the IGA observed that... Actually, it was the IGA put this question to a petitioner saying that your wife got this certificate for a specific purpose to prove that she underwent a tubal ligation procedure. Petitioner confirmed that. So the reason, the whole purpose of submitting that this floating population certificate is to show that his wife was sterilized. Counsel, I can sort of understand that, although it's looking backwards 12 or 15 years. But then the statement as to the compensation fee, I take it, is that a necessary part of every form? Of course, I can't read the Chinese. Is there a blank for it or was it just an add-on? Yes, you're right. If you look at... Okay, right before about 13,000 yuan collected for social compensation fee, that's a pre-printed Chinese character stating that the record of unauthorized birth fee assessment. So presumably, the issuing official looked at some previous records and that's where he got that number from? Yeah, it could be, Your Honor. I think at the time when the official issued this add together all the fees collected from Petitioner and his family. So they came up with a total number of 13,000 yuan. While Petitioner initially excluded the 4,000 because he considered that not as a fine payment for the unauthorized birth, but as a fee in order to get this certificate to be issued. Is there any background that says that to get a floating population certificate, there's that kind of fee for it? Or was that really a I was asking the court to remain this case at least to the BIA so that the wife, since the wife was the one who paid the money, the wife can provide a clarifying letter explaining the difference in the fine amount. We're well over the time, but let me ask my Thank you, Mr. Lee. We'll now hear argument from the government, Mr. McConner. Thank you, Your Honor. May it please the court, Trim McConner from the Department of Justice. Mr. Lee, please mute your phone. Yes, sir. I'm not sure we're hearing Mr. McConner. At least I'm not. No, I'm not either. I don't see him as muted, but I'm not hearing him. I'm not either. Can you hear me now, Your Honor? Yes. There we go. Okay, there we go. I apologize. I hit it and I think it's somehow Let's be sure we start the clock fresh for Mr. McConner. Please proceed. All right. I apologize about that. May it please the court, Trim McConner from the Department of Justice on behalf of the respondent. This court previously remanded for the BIA to consider petitioner's arguments. The BIA has now done so and also allowed the petitioner to introduce new evidence. New evidence does seem to indicate that it's likely that his wife underwent a was forced or voluntary. And on that issue, all that we have is testimony, which is why the credibility finding was so key here. And I'd like to clarify something right off the bat about the date of the procedure and the discrepancy there. The petitioner wasn't dinged just for being off by a month or a couple of weeks for something that had happened years ago. It's that he was off after being so certain and saying that the date was one he would never remember. And then also he gives this very unusual explanation about the lunar calendar and he can't really back it up. He doesn't provide any corroboration. But counsel, he said that the October 10th, 1995 date was very important to him. It was something that he would remember forever. And the BIA basically said, well, no, even if you accept translating it, it didn't fall within November, which was the date on the certificate because the BIA said that translated, it would have gone under the Gregorian calendar to December 1, whereas if it had been November 30th that it had translated to in the BIA's view, that that then wouldn't have impacted his credibility, isn't that correct? It's hard to tell. I think the BIA added that footnote, your honor, just to kind of give the petitioner the benefit of the doubt. The petitioner always had the burden to provide evidence of what lunar calendar he's referring to, if there are multiple ones. And so given that the case has already been remanded, that exact kind of determination with an open record, your honor, the burden was always on the petitioner to provide that kind of evidence about what the lunar calendar says. I take it the government doesn't quarrel with the fact that the translation from the lunar calendar to the Gregorian calendar would be around December 1st, correct? Correct, your honor. I also tried to research it and came up with the same number, but as I said, for what it's worth, it was the petitioner's burden to try to introduce which calendar he thought it would translate to, given that that was such a key part of his explanation. So unlike- It just seems to me that given that the written document says December and that under this translation issue, it would have been basically November 30th. I have a hard time seeing how that discrepancy is not trivial. Well, again, we think, your honor, that the petitioner had the burden of trying to show the lunar calendar and he was off on it. I agree normally just being off for something that happened so long ago wouldn't normally be something that's worth pointing out or worth an adverse credibility finding. I do think it's different here given how certain he was. But what's off, counsel, is the written document, right? So it's like did, in looking at it from petitioner's perspective, is it that the writers of the written document got it wrong potentially by a day? And if they did, there's nothing that would detract from petitioner's point that I'll remember it forever because October 10th is so important to us. So I still have a lot of trouble seeing how this particular discrepancy is anything other than trivial. And it is possible, your honor, that happened. I wouldn't say the record compels it. But as we point out in our brief, even if the court does find that the date issue is unclear or would be trivial, there's still this significant discrepancy about the amount of the fines. Petitioner and his wife both said it was 9,000. The documentation shows 13,000. And when confronted with it, petitioner gives this kind of convoluted explanation about what the extra 4,000 was for, who had paid it, when it was paid, that sort of thing. I agree, counsel, that it is a convoluted type of explanation. I think the cases we normally see on this type of issue are a petitioner says the amount of the fine was 80% of X, and thus that they're overstating. Here, the petitioner would theoretically be understating, which he would have no possible reason to do to advance his claim since if he were to get past credibility, he has to show a significant economic hardship. Why isn't that relevant here? I don't think that the amount of the fine per se was the issue, your honor. It's just that there was a difference. It suggests that maybe the documentation, the form that he's submitting, that it didn't actually happen. There wasn't a fine of any amount. It suggests that maybe the story he's giving isn't correct, that it's not truthful. It's not accurate. It's just it's one of those things where the numbers don't match up. And that's the problem, your honor. And so, as I said, we, of course, have before us the issue of the timing and the calendar, and we also have the 4000 RMB issue. Weren't there other issues that the IJ and the BIA looked at that were not appealed that could also have borne on the IJ's view of the credibility of the petitioner? My recollection of the BIA's opinion, your honor, was that they focused on those two issues, the timing and the fine amount. There were other ones that IJ had pointed out, but I believe that the BIA had said in its final footnote on page three that it would not address the IJ's other reasons, your honor. How do we treat that? The IJ is, if you will, the finder of fact. The IJ observed the credit, you know, the demeanor of the petitioner. So, let's say there were five things that the IJ observed. The BIA chose not to review all of any of them except these last two. What are we to do with that in terms of our evaluation of the work of the IJ and the BIA? Can that be taken into account as well? Or do we have to focus exclusively on these two issues that were appealed? So, it would depend on the case, your honor. I think in this one, it appears the BIA did not expressly incorporate the IJ's opinion on those other grounds. If the BIA had done that, I agree. This court could consider all the things that the IJ had listed in the other bases. But because the BIA didn't, and in fact, they kind of seem to disclaim it in their final footnote, I do think that the court is kind of limited to the issue that the BIA addressed on credibility, your honor. Okay, thank you. And so, as I said, even if the court isn't persuaded by the timing issue, there is still the substantial amount of the fine, the discrepancy there between the documentation, petitioner's story, and his convoluted explanation for it. And that amount, the 4,000K, the 4,000 would be enough, as the petitioner had testified, to be perhaps a year or two's worth of salary, the kind of thing that he probably wouldn't have forgotten or his wife wouldn't have forgotten. And also, just kind of common sense would say it's a lot of money for a printing fee, especially when the document itself chalks up 13,000 of the total amount. And so, one final point is that I don't think, even setting aside petitioner's testimony, that there's any other documentation in the record that would compel a ruling from this court in his favor. The State Department report does say that there are rumors of some forced sterilizations in China during this time period, but the record at 413 says that their doctors have not been able to confirm any past the 1980s, and that U.S. consular officials had also not been able to confirm any. So, I don't think it's one of those situations where perhaps the court would just kind of assume that if this procedure happened, that it must have been forced. So, I don't think there's anything in the record. In this case, where we have an amount that is worth more than a year's worth of salary, can we assume that the BIA and previously the IJ figure, nobody's going to forget this amount, and therefore, it bears on the credibility. Right, and they expressly say that, Your Honor, that it's a large amount. Petitioner himself had testified to that. And as I said, and as the court is well aware, the case had already been down once on remand with an open record where the IJ had, in 2011, listed a lot of different issues and holes in Petitioner's case and documentation that he could introduce. And so, he was on notice of all these different problems almost a decade ago. So, when he came back again, he was certainly able, if he had the material, to introduce it or to provide some explanation that's not quite so convoluted as he did for the 4,000 missing, Your Honor. Counsel, just to be clear, it's a fairly large record. You used the term printing fee. Is that used at a particular page? I kind of had in my head an issuance fee. Where does that specific statement come from as to what either he said or somebody said you had to pay a fee to get the booklet? It may be my interpretation of it, Your Honor. As I read it, it was a 4,000 fee to have the document issued. And I interpreted that to mean it was a 4,000 fee to kind of go through the paperwork, get the government officials to sign off, and that sort of thing. And either way, that's a large amount of money, Your Honor. Certainly something they would remember. My impression, and I could be wrong, my impression is that these, if they're legitimate certificates for floating population, are probably held by tens or hundreds of millions of Chinese, and there would be a lot of fees collected if that were the standard fee. That may be just me. Any other questions that my colleagues have? We are over time at this point. Other questions? No. Okay. Hearing none, we thank both counsel for their argument. The case just argued. Lin versus Farr is submitted.
judges: Boggs, M. Smith Jr., Bennett